UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------- x

| | |
|---|---|
| PATRIARCH PARTNERS MANAGEMENT GROUP, LLC, and PATRIARCH PARTNERS AGENCY SERVICES, LLC, | : : : : |
| Plaintiffs, | : : |
| -against- | : : |
| | : |
| IMG HOLDINGS, INC., DANA CLASSIC FRAGRANCES, INC., INTER-MARKETING GROUP, INC., DANA FRAGRANCE BRANDS, LLC, IMG FRAGRANCE BRANDS, LLC, AND ST. HONORE HOLDING, INC., | : : : : : |
| Defendants. | : : : |

20-cv-6946-ALC

---------------------------------------------------------- X

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO REMAND**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ...................................................................................2

    A.    The State Court Action.................................................................................2

    B.    The Zohar Funds' Bankruptcy Proceedings...........................................4

    C.    The Zohar Funds' Unsuccessful Motion to Stay State Court Cases.....................5

    D.    The Notice of Removal ...............................................................................6

    E.    Defendants' Request for Pre-Motion Conference on Motion to Transfer.................................................................................................7

LEGAL STANDARD ...........................................................................................7

ARGUMENT .......................................................................................................9

I.    THERE IS NO FEDERAL SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS.....................................................................................9

    A.    This Action Does Not "Arise In" the Bankruptcy Proceeding. ...........................9

    B.    This Action Does Not "Relate To" the Bankruptcy Proceeding.......................... 12

II.    EVEN IF THERE WERE SUBJECT MATTER JURISDICTION, THIS CASE SHOULD BE REMANDED ON PERMISSIVE ABSTENTION OR EQUITABLE REMAND GROUNDS................................................................ 14

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. CitiMortgage, Inc.*,
No. 11 CV 1927, 2012 WL 967582 (S.D.N.Y. Mar. 13, 2012)............................................ 7

*Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*,
2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011) .................................................................. 12

*In re Ampal-Am. Israel Corp.*,
2015 WL 5176395 (Bankr. S.D.N.Y. Sept. 2, 2015) ....................................................... 13

*Baker v. Simpson*,
613 F.3d 346 (2d Cir. 2010) ......................................................................................8, 9

*In re Beck Indus., Inc.*,
479 F.2d 410 (2d Cir. 1973) ......................................................................................... 13

*Buechner v. Avery*,
No. 05 CIV. 2074 (PKC), 2005 WL 3789110 (S.D.N.Y. July 8, 2005)............................. 18

*In re Casual Male Corp.*,
317 B.R. 472 (Bankr. S.D.N.Y.2004) .............................................................................. 8

*In re Cuyahoga Equip. Corp.*,
980 F.2d 110 (2d Cir. 1992) ......................................................................................... 12

*Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*,
130 B.R. 405 (S.D.N.Y. 1991) ......................................................................... 15, 16, 17, 18

*Harve Benard Ltd. v. Nathan Rothschild, K.I.D. Int'l, Inc.*,
2003 WL 367859 (S.D.N.Y. Feb. 19, 2003) .................................................................... 11

*Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*,
337 F. Supp. 3d 274 (S.D.N.Y. 2018) (Carter, J.), *aff'd*, 785 F. App'x 18 (2d
Cir. 2019) ................................................................................................................... 19

*Luan Inv., S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*,
304 F.3d 223 (2d Cir.2002) .......................................................................................... 10

*In re Marconi PLC*,
363 B.R. 361 (S.D.N.Y. 2007) ........................................................................................ 8

*In re Masterwear Corp.*,
241 B.R. 511 (Bankr. S.D.N.Y. 1999) ............................................................................ 20

*McMillan v. Barclays Bank PLC*,
    No. 1:13-CV-01095 ALC DF, 2014 WL 4364053 (S.D.N.Y. Sept. 3, 2014)................17, 19

*N.Y. Commercial Bank v. Pullo*,
    No. 12-02052, 2013 WL 494050 (Bankr. S.D.N.Y. Feb. 7, 2013).....................................17

*In re New York City Off-Track Betting Corp.*,
    434 B.R. 131 (Bankr. S.D.N.Y. 2010)..........................................................................19, 20

*Norkin v. DLA Piper Rudnick Gray Cary, LLP*,
    No. 05 CIV. 9137 (DLC), 2006 WL 839079 (S.D.N.Y. Mar. 31, 2006)............................ 10

*In re NTL, Inc.*,
    295 B.R. 706 (S.D.N.Y. 2003)........................................................................................... 15

*In re Nw. Airlines Corp.*,
    384 B.R. 51 (S.D.N.Y. 2008) ............................................................................................ 11

*In re Olympia & York Maiden Lane Co. LLC*,
    No. 98 B 46167 JLG, 1999 WL 58581 (Bankr. S.D.N.Y. Jan. 25, 1999)......................15, 16

*In re Paso Del Norte Oil Co.*,
    755 F.2d 421 (5th Cir. 1985) .............................................................................................. 9

*Post Inv'rs LLC v. Gribble*,
    No. 12 CIV. 4479 ALC AJP, 2012 WL 4466619 (S.D.N.Y. Sept. 27, 2012)
    (*Carter*, J.)........................................................................................................................8, 13

*Rest Twelve, Inc. v. Visan*,
    458 B.R. 44 (S.D.N.Y. 2011) ........................................................................................15, 19

*In re Robert Plan Corp.*,
    777 F.3d 594 (2d Cir. 2015).............................................................................................8, 9

*Schumacher v. White*,
    429 B.R. 400 (E.D.N.Y. 2010).......................................................................................8, 18

*Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*,
    No. 12 CIV. 1397 LTS HBP, 2012 WL 4794450 (S.D.N.Y. Oct. 9, 2012) ........................ 18

*Shiboleth v. Yerushalmi*,
    412 B.R. 113 (S.D.N.Y. 2009)............................................................................................ 8

*In re Shirley Duke Assocs.*,
    611 F.2d 15 (2d Cir. 1979)..............................................................................................8, 9

*Stern v. Marshall*,
    564 U.S. 462 (2011) .......................................................................................................... 17

*Tilton v. MBIA Inc.*,
    19-cv-9733 (WHP), 2020 WL 5602021 (S.D.N.Y. Sept. 18, 2020)..............................12, 16

*In re Tower Auto., Inc.*,
    356 B.R. 598 (Bankr. S.D.N.Y. 2006)............................................................................... 13

*Zohar CDO 2003-1, LTD., v. Patriarch Partners, LLC*,
    17-cv-307 (WHP), 2020 WL 5600851 (S.D.N.Y. Sept. 18, 2020) ("*Zohar I v. Patriarch Partners*")....................................................................................................12, 16

*In re: Zohar III, Corp.*,
    18-10512 (KBO) (Bankr. D. Del.)..................................................................................... 1

**Statutes**

28 U.S.C. § 1334 ..........................................................................................1, 6, 8, 14

28 U.S.C. § 1404 ..................................................................................................... 16

28 U.S.C. § 1412 ..................................................................................................... 16

28 U.S.C. § 1452 ................................................................................................6, 7, 15

Plaintiffs Patriarch Partners Management Group, LLC ( "PPMG") and Patriarch Partners Agency Services, LLC ("PPAS" and, together with PPMG, "Plaintiffs"), by and through their undersigned attorneys, Allegaert Berger & Vogel LLP, respectfully submit this Memorandum of Law in support of their motion to remand this case, which was removed to this Court from New York State Supreme Court, New York County (the "State Court").

## PRELIMINARY STATEMENT

Plaintiffs commenced this action in New York State Court by filing a Summons and Complaint against Defendants IMG Holdings, Inc., Dana Classic Fragrances, Inc., Inter-Marketing Group, Inc., Dana Fragrance Brands, LLC, IMG Fragrance Brands, LLC, and St. Honore Holding, Inc. (collectively, "Defendants") to recover unpaid management and agency fees and expenses from Defendants under two agreements. Remand is required because the alleged sole basis for federal subject matter jurisdiction – 28 U.S.C. § 1334, governing bankruptcy cases and proceedings – is inapplicable to this action, which contains standard state-law contractual, unjust enrichment/*quantum meruit*, and account stated claims between non-debtors.

Defendants assert that removal is justified by the existence of certain bankruptcy proceedings pending before the United Stated Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). *See In re: Zohar III, Corp.*, 18-10512 (KBO) (Bankr. D. Del.) (the "Bankruptcy Proceedings"). However, this is not a case "arising in" bankruptcy because the claims do not rely on the Bankruptcy Proceedings for their existence. This is not a case "related to" a pending bankruptcy because it is a dispute between non-debtors that will not affect the bankruptcy estate's property. Nor does the resolution of this case require the interpretation or enforcement of the Delaware Bankruptcy Court's orders. Therefore, the claims do not fall within

28 U.S.C. § 1334, and this Court should remand for lack of subject matter jurisdiction.

Even if the Court were to conclude that it has subject matter jurisdiction – and it should not – this action should still be remanded under the doctrines of permissive abstention and equitable remand. Remand would assist the efficient administration of the bankruptcy estate. The claims at issue here are state law claims between non-debtors with no effect on the Debtors' estate. The state court can efficiently adjudicate Plaintiffs' straightforward, non-core claims. In contrast, Defendants presumably seek to have these claims bogged down in a complex, time-consuming adversary proceeding in which numerous unrelated causes of action predominate, and after which Plaintiffs would be forced to endure *de novo* review in the District Court, a process that may serve Defendants' desire to avoid paying contractually-owing amounts but in no way serves the just, speedy, and inexpensive determination of this action. Even this is unclear, however, as Defendants do not specify whether they seek to address these claims as a stand-alone adversary proceeding in the bankruptcy or whether Defendants would somehow endeavor to bring these claims into the pending adversary proceeding (far less how they would do so procedurally, given they are not parties to that proceeding).

For these reasons, Plaintiffs respectfully request that this action be remanded to the State Court.

## FACTUAL BACKGROUND

### A.    The State Court Action

On July 14, 2020, Plaintiffs initiated this action by filing the summons and complaint in the New York Supreme Court for the County of New York, the jurisdiction expressly selected in both the Management Services Agreement and Credit Agreement, seeking to recover management fees, associated expenses and agent fees owed by Defendants. *See* Dkt.

1-1. The complaint states claims for breach of contract (along with related quasi-contractual claims) arising out of Defendants' failure to make required payments under two separate agreements between the parties.

Defendant IMG Holdings, Inc. is a New York corporation with its principal place of business in New York, New York. Dkt. 1-1 at 5 ¶ 4. Defendant Dana Classic Fragrances Inc. is a Delaware corporation with its principal place of business in New York, New York. *Id*. ¶ 5. Defendant Inter-Marketing Group, Inc. is a Florida corporation with its principal place of business in New York, New York. *Id*. ¶ 6. Defendant Dana Fragrance Brands, LLC is a Delaware limited liability company with its principal place of business in New York, New York. *Id*. ¶ 7. Defendant IMG Fragrance Brands, LLC is a Delaware limited liability company with its principal place of business in New York, New York. *Id*. ¶ 8. Defendant St. Honore Holding, Inc. is a Delaware corporation with its principal place of business in New York, New York. *Id*. ¶ 9.

Defendants entered into a Management Services Agreement, dated as of January 25, 2011, as amended as of October 1, 2015 (the "MSA"), for management and operational consulting and other services (and associated expenses). (Dkt. 1-1 at 4-5 ¶ 1.) Under the MSA, Defendants are jointly and severally obligated to pay for services provided by PPMG, as well as to indemnify PPMG for costs, disbursements, and other fees in connection with the MSA. *Id*. at 6-9 ¶¶ 12-15. Defendants have failed to pay $3,114,487.47 owed for services and expenses incurred under the MSA. *Id*. ¶ 13.

PPAS provided services as administrative agent under a Third Amended and Restated Loan and Security Agreement, dated as of January 15, 2009, as amended (the "Credit Agreement"), under which certain loans were made to Defendants Dana Classic Fragrances Inc.

3

and Inter-Marketing Group, Inc. (the "Borrower Defendants") and Defendants IMG Holdings, Inc., Dana Fragrance Brands, LLC, IMG Fragrance Brands, LLC and St. Honore Holding, Inc. gave a security interest to PPAS to secure Borrower Defendants' performance under the Credit Agreement. *Id*. at 5 ¶ 1, 9 ¶ 17. Defendants are required to pay PPAS an annual agent fee of $75,000 under that Credit Agreement. *Id*. at 9-10 ¶¶ 18-23. To date, Defendants have failed to pay PPAS agent fees in the amount of $375,000. *Id*. at 10 ¶¶ 23-24.

### B.     The Zohar Funds' Bankruptcy Proceedings

On March 11, 2018, the Zohar Funds[1] (the "Debtors" or the "Zohar Funds") filed voluntary Chapter 11 petitions in the Delaware Bankruptcy Court. Dkt. 1 ("Notice of Removal") at 2. The Zohar Funds own direct or indirect intangible economic interests in and/or are creditors of various portfolio companies including Defendants (the "Portfolio Companies").

On May 21, 2018, the Bankruptcy Court so-ordered a Settlement Agreement (the "Settlement Order") between and among the Zohar Funds and various stakeholders, including a number of entities associated with Lynn Tilton, including Plaintiffs (referred to as the "Patriarch Stakeholders"). *See* Dkt. 1-2. A principal purpose of the Settlement Agreement was to permit the Portfolio Companies to be monetized in an efficient way, in part by deferring disputes among the stakeholders. *See* Dkt. 1-3 ("Aug. 4 Hearing Tr.") at 89:17-22. Defendants, like other Portfolio Companies, did not participate in the settlement negotiations and were not parties to that Settlement Agreement. *See* Dkt. 1-2 at 19.

The terms of the Settlement Agreement, taken together, reflect compromises made by multiple stakeholders to forego substantial rights in exchange for the protection of other substantial rights. For one thing, the agreement provided for an eighteen-month litigation

---

[1] "Debtors" or the "Zohar Funds" are the following entities: Zohar III, Corp.; Zohar II 2005-1, Corp.; Zohar CDO 2003-1, Corp.; Zohar III, Ltd.; Zohar II 2005-1, Ltd.; Zohar CDO 2003-1, Ltd.

standstill.  Among the concessions made by the Patriarch Stakeholders was Ms. Tilton's resignation as sole director of the Zohar Funds.  Dkt. 1-2 at 9 ¶ 1.  In return, the Patriarch Stakeholders received, among other protections, the provisions in Paragraph 18 of the Settlement Agreement.  That paragraph provides that the Patriarch Stakeholders would retain their claims against the Portfolio Companies and that such claims would be "deemed due and payable through the closing of any monetization event" on a *pari passu* basis with similarly situated claims, subject to a nine-figure capped amount.  Dkt. 1-2 at 13 ¶ 18.  Nothing in the Settlement Agreement in the Bankruptcy Proceedings stated that those claims would or could be resolved in those proceedings.

Apart from this "pay first, fight later" protocol in Paragraph 18, which required the summary payment of documented claims against the Portfolio Companies in connection with a monetization event, subject to any later efforts by the Zohar Funds to claw such payments back, nothing in the Settlement Agreement concerned claims the Patriarch Stakeholders might have against the Portfolio Companies; the eighteen-month standstill does not apply to such claims.  Further, even if the standstill window did ever apply to such claims, the Patriarch Stakeholders unquestionably retained the right to pursue those claims once the standstill expired in late 2019.  *See* Dkt. 1-2 at 15 ¶ 25 ("Upon the expiration of the [standstill] Window, all parties to the chapter 11 cases shall have and may exercise any and all rights available under applicable law."); *see also id.* at 13-14 ¶ 19 (observing that such rights would include those "with respect to venue and jurisdiction").  Further, pending monetization and throughout the standstill, the Settlement Agreement expressly provided that Portfolio Companies were to be "operated in the ordinary course of business", Dkt. 1-2 at 14 ¶ 20.

    C.    **The Zohar Funds' Unsuccessful Motion to Stay State Court Cases**

On July 21, 2020, the Zohar Funds moved in the Bankruptcy Court to stay certain lawsuits against Portfolio Companies, including this lawsuit, on the grounds that (i) the Settlement Agreement requires the Patriarch Stakeholders to bring all claims against Portfolio Companies in Bankruptcy Court, and (ii) the state court claims are interfering with the monetization process and thus a stay is necessary for purposes of enforcing the monetization procedures order Bankruptcy Court (the "Motion to Stay"). The Motion to Stay was premised on the same central premise as Defendants' removal petition – namely, that contractual claims against Portfolio Companies are so connected to the Bankruptcy Proceeding that they must be litigated in the Delaware Bankruptcy Court. *See* Section D, below.

On August 4, 2020, after full briefing and a hearing, the Bankruptcy Court denied the Motion to Stay. *See* Aug. 4 Hearing Tr. at 84-91. The Bankruptcy Court flatly rejected the Zohar Funds' argument that the Settlement Agreement "preclude[d] the State Court lawsuits" or reflected an agreement to "have this court resolve the claims of the Patriarch stakeholders [including Plaintiffs' claims in this action] in this court." *See id*. at 85:20-25. The Bankruptcy Court specifically disagreed that under the Settlement Agreement, the court had to oversee a "validation" process of such claims. *See id*. at 88:12-14 (rejecting Debtors' "belief that they must 'validate' an asserted Patriarch claim or interest before paying"). The Bankruptcy Court further found that the Settlement Agreement's "pay first, fight later" protocol did not impede the planned monetization of the Portfolio Companies "free and clear" of all claims against them. *See id*. at 90:19-91:11.

## D.    The Notice of Removal

On August 27, 2020, Defendants filed their Notice of Removal in this action. The sole basis for removal is the purported existence of jurisdiction under 28 U.S.C. §§ 1334(b) and

1452(a). *See* Notice of Removal at 1. Specifically, according to Defendants, "arising in" and/or "relating to" jurisdiction exists because: "IMG is a portfolio company and affiliate of the debtors in the ongoing Bankruptcy Proceedings, and is subject to a sale and monetization process that is currently being overseen by the Bankruptcy Court to maximize the value of the debtors' estate; Plaintiffs are also affiliates of the debtors and parties to the Bankruptcy Proceedings; and the alleged management fees and indemnification obligations at issue in the State Court Action are the subject of a settlement order issued by, and an ongoing adversary proceeding before, the Bankruptcy Court.". *Id* at 1-2.

### E.    Defendants' Request for Pre-Motion Conference on Motion to Transfer

On September 3, 2020, Defendants filed a letter with this Court requesting a pre-motion conference regarding an anticipated motion to transfer venue to the Delaware Bankruptcy Court and for a stay of time to respond to Plaintiffs' Complaint until the resolution of the motion to transfer. *See* Dkt. 6. Plaintiffs opposed this request in a September 8, 2020 letter (Dkt. 9), on the grounds (among others) that this Court has no subject matter jurisdiction over this action. *Id*. As of the filing hereof, no pre-motion conference has been scheduled on Defendants' contemplated motion to transfer.

## LEGAL STANDARD

Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). "When challenged, the party seeking removal bears the burden of establishing that the federal district court has jurisdiction." *Allstate Ins. Co. v. CitiMortgage, Inc.*, No. 11 CV 1927, 2012 WL 967582, at *2 (S.D.N.Y. Mar. 13, 2012). On a motion for

remand, the Court "must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff." *Post Inv'rs LLC v. Gribble*, No. 12 CIV. 4479 ALC AJP, 2012 WL 4466619, at *2 (S.D.N.Y. Sept. 27, 2012) (*Carter*, J.). "Additionally, 'out of respect for the limited jurisdiction of the federal courts and the rights of states, [courts] must resolve any doubts against removability.'" *Id.* (*quoting In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007)).

District courts have jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "Arising under" and "arising in" claims are both considered "core" bankruptcy proceedings, while "related to" claims are considered "non-core" proceedings. *Shiboleth v. Yerushalmi*, 412 B.R. 113, 116 (S.D.N.Y. 2009). Claims "arise in" bankruptcy when, although not based on any right expressly created by Title 11, they "'would have no practical existence but for the bankruptcy.'" *In re Casual Male Corp.*, 317 B.R. 472, 476 (Bankr. S.D.N.Y. 2004) (*quoting Bergstrom v. Dalkon Shield Claimants Trust*, 86 F.3d 364, 372 (4th Cir. 1996)); *see also In re Robert Plan Corp.*, 777 F.3d 594, 596–97 (2d Cir. 2015) (same); *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (same); *In re Marconi PLC*, 363 B.R. 361, 366 (S.D.N.Y. 2007) ("To be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment."). "Related to" jurisdiction exists where a claim has a "conceivable effect" on the bankruptcy estate. *In re Casual Male Corp.*, 317 B.R. at 476.

The limited jurisdictional scope of the bankruptcy courts counsels against such courts resolving disputes in which the debtor is not involved. *See, e.g., In re Shirley Duke Assocs.*, 611 F.2d 15, 19 (2d Cir. 1979); *Schumacher v. White*, 429 B.R. 400, 406 (E.D.N.Y. 2010) ("[W]here, as here, the primary lawsuit is between third parties, there is no need for the

Bankruptcy Court to resolve the dispute."). Indeed, the "general rule" is that a party is "subject to the [bankruptcy] court's jurisdiction in his dealings with the debtor, but not in his dealings with third parties". *In re Shirley Duke*, 611 F.2d at 19; *see also In re Paso Del Norte Oil Co.*, 755 F.2d 421, 424 (5th Cir. 1985) ("A court of bankruptcy has no power to entertain collateral disputes between third parties that do not involve the bankrupt or its property."). The only exception is in the limited circumstances where adjudicating disputes between non-debtors is critical to the resolution of the bankruptcy proceeding. *See id.*

## ARGUMENT

### I.    THERE IS NO FEDERAL SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS.

Defendants removed this case to federal court based solely on federal bankruptcy jurisdiction, claiming that Plaintiffs' claims "arise in" or "relate to" the Bankruptcy Proceedings. *See* Dkt. 1 at 6-10. Defendants are incorrect on both counts.

#### A.    This Action Does Not "Arise In" the Bankruptcy Proceeding.

An action "arises in" bankruptcy only if it "would have no existence outside of the bankruptcy." *In re Robert Plan Corp.*, 777 F.3d 594, 596-97 (2d Cir. 2015); *see also Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (claims that "arise in" bankruptcy "would have no practical existence but for the bankruptcy"). This action – a dispute between non-debtors based on freestanding, written agreements pre-dating the bankruptcy petitions – plainly would exist regardless of the bankruptcy, and Defendants cannot claim otherwise. This should end the inquiry.

In arguing that the Bankruptcy Court has "arising in" jurisdiction over Plaintiffs' claims, Defendants make conclusory assertions that this action is a "core" proceeding and thus that there is "arising in" jurisdiction. Notice of Removal at 7. However, when the dispute

9

sounds in contract, the determination of whether the lawsuit is core turns on "(1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." *Norkin v. DLA Piper Rudnick Gray Cary, LLP*, No. 05 CIV. 9137 (DLC), 2006 WL 839079, at *3 (S.D.N.Y. Mar. 31, 2006). Here, as Defendants concede (Notice of Removal at 8), the agreements at issue are antecedent to the bankruptcy petition. Contrary to Defendants' argument, the fact that invoices at issue were invoiced after the Bankruptcy Court issued the Settlement Order does not render Plaintiffs' claims in this action core. *See Luan Inv., S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 229 (2d Cir.2002) (the fact that a post-petition dispute regarding a pre-petition contract could arise outside of the bankruptcy proceedings "weighs against its core status").

Moreover, the claims at issue simply are not, as Defendants disingenuously claim, "the subject of an adversary proceeding that commenced on March 9, 2020." Notice of Removal at 7. To the contrary, Defendants are not even parties to that adversary proceeding, nor have Plaintiffs asserted the breach of contract claims that are the subject of this action in that action. That adversary proceeding – which was filed in 2020 and as to which issue has not yet been joined – alleges in one of thirty-three counts in a sprawling 476-paragraph complaint that one of the two agreements at issue here was terminated and seeks declaratory relief. It is not clear what impact that assertion, by a non-party to this action, has on Plaintiffs' claims here. In any event, if Defendants wish to advance the same defense, it could readily and efficiently be litigated in this action by the State Court. In contrast, forcing Plaintiffs to litigate their straightforward claims for non-payment of contractual debts in the context of a wide-ranging adversary proceeding that remains in its infancy (as Defendants presumably seek to do), serves no efficiency other than Defendants' desire to delay and avoid paying legitimate debts. As a result, the adversary

10

proceeding does not change the fact that the "causes of action arose wholly independently of the bankruptcy proceedings, are not unique to or uniquely affected by the bankruptcy proceedings, and do not directly affect a core bankruptcy function." *In re Nw. Airlines Corp.*, 384 B.R. 51, 57 (S.D.N.Y. 2008).

   In fact, the Bankruptcy Court has already rejected Debtors' application to stay the claims at issue here – based on arguments strikingly similar to those advanced by Defendants here – and specifically found that the Settlement Agreement, embodied in a settlement order, did not "reflect the party's agreement to preclude the State Court lawsuits and have this court resolve the claims of the Patriarch stakeholders in this court". Aug. 4 Hearing Tr. at 85:22-25. The Bankruptcy Court specifically held that the Settlement Agreement established only a limited "pay first, fight later" protocol in connection with a monetization event, pursuant to which the Patriarch Stakeholders provide documentation of any claims and are then paid for them. *See* Aug. 4 Hearing Tr. at 91:5-11. In addition, as the Bankruptcy Court also held, the Settlement Agreement did not create any process for adjudicating the Patriarch Stakeholders' claims against the Portfolio Companies in Bankruptcy Court. *See id.* at 85:20-25. *Cf. Harve Benard Ltd. v. Nathan Rothschild, K.I.D. Int'l, Inc.*, 2003 WL 367859, at *6 (S.D.N.Y. Feb. 19, 2003) (bankruptcy court "is in the best position to determine whether the Settlement Agreement and Order [entered in bankruptcy] in fact shield [defendant] from liability . . . . [i]f the bankruptcy judge determines that the case is not properly before that court, the action can be remanded").

   Similarly, the Honorable William H. Pauley III of this Court recently rejected motions to transfer to the United States District Court of Delaware, for referral to the Delaware Bankruptcy Court where the Bankruptcy Proceedings are pending, by, *inter alia*, certain of the Zohar Funds and MBIA Insurance Corporation ("MBIA"), all of which are parties to the

Bankruptcy Proceedings (indeed, the Zohar Funds are the Debtors). *See Tilton v. MBIA Inc.*, 19-cv-9733 (WHP), 2020 WL 5602021 (S.D.N.Y. Sept. 18, 2020) ("*Tilton v. MBIA*"); *Zohar CDO 2003-1, LTD., v. Patriarch Partners, LLC*, 17-cv-307 (WHP), 2020 WL 5600851 (S.D.N.Y. Sept. 18, 2020) ("*Zohar I v. Patriarch Partners*"). There, movants argued that the actions were so "intertwined" with the Bankruptcy Proceeding that they were core, and argued that a complaint in an adversary proceeding in the Bankruptcy Proceeding was substantially similar to the complaints at issue. *See Tilton v. MBIA at* *9; *Zohar I v. Patriarch Partners* at *5. Nonetheless, the court, which recognized that (unlike here) some of the paragraphs of the complaints were identical to the bankruptcy complaint, rejected the assertion that the state law claims at issue were core and held, "The similarities are apparent. But those similarities alone" do not alter the fact that the state law "claims do not spring from Title 11." *Tilton v. MBIA at* *10; *Zohar I v. Patriarch Partners* at *5.

> ### B.    This Action Does Not "Relate To" the Bankruptcy Proceeding.

Defendants' alternative argument – that this action is a non-core proceeding "related to" the bankruptcy, *see* Notice of Removal at 8-9 – is also wrong. State law claims between non-debtors are "related to" a bankruptcy only when they may have a "conceivable effect" on the debtor's estate. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). In order to find that an action has a conceivable effect, "any contingencies cannot be too far removed", and there cannot be "too many links in the chain of causation before the bankruptcy estate is affected." *Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 2011 WL 4965150, at *3 (S.D.N.Y. Oct. 19, 2011).

The only purported "relation" to the Bankruptcy Proceedings is that Plaintiffs have stated claims against a Portfolio Company in which the Zohar Funds hold an ownership interest, and, according to Defendants, the claims may indirectly impact the estate's value. *See*

Notice of Removal at 9.  But this is insufficient as a matter of law.  A claim against an affiliate of a debtor – and not the debtor or its directly-owned assets – does not create "relating to" jurisdiction.  *See In re Beck Indus., Inc.*, 479 F.2d 410, 415 (2d Cir. 1973) (holding that an ownership interest in a subsidiary "is not the equivalent of ownership of the subsidiary's property or assets" and therefore a bankruptcy court does not have subject matter jurisdiction over claims against a "subsidiary of the debtor merely because its stock is held by the debtor"); *In re Ampal-Am. Israel Corp.*, 2015 WL 5176395, at *9 (Bankr. S.D.N.Y. Sept. 2, 2015) ("a bankruptcy court lacks 'related to' jurisdiction over disputes between a non-debtor subsidiary and a third party that may affect the value of the subsidiary's stock but not the debtor's title to that stock"); *In re Tower Auto., Inc.*, 356 B.R. 598, 601 (Bankr. S.D.N.Y. 2006) ("a lawsuit that impacts only the value of a debtor's subsidiary is not within the 'related to' jurisdiction of the bankruptcy court ... despite the breadth of the 'conceivable impact' formulation").

Nor would it make sense to conclude that Plaintiffs' claims against the Zohar Funds' non-debtor affiliates will have an effect on the bankruptcy estate.  The Portfolio Companies, including Defendants, are to be operated in the ordinary course pending monetization.  Dkt. #1-2 at 14 ¶ 20.  This would include paying debts as they become due. Indeed, it cannot be the case that claims against a subsidiary of a debtor are generally subsumed under "relating to" jurisdiction, or else bankruptcy jurisdiction would be broadened beyond recognition.  *See Tower Auto*, 356 B.R. 598 at 601 (extending bankruptcy jurisdiction to any action "which may have an impact on the value of a debtor's subsidiary . . . 'would have the result of bringing every wholly owned subsidiary into every Bankruptcy case regardless of the circumstances'") (quoting *In re Winstar Commc'ns, Inc.*, 284 B.R. 40, 51 (D. Del. Bankr. 2002)); *Post Inv'rs LLC*, 2012 WL 4466619 at *3 (Carter. J.) ("the Supreme Court has

admonished that 'a bankruptcy court's 'related to' jurisdiction cannot be limitless'") (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)).

In addition, just as the Zohar Funds did in their Motion to Stay, Defendants make the unsubstantiated and incorrect assertion that Plaintiffs' claims against the Portfolio Companies might interfere with ongoing efforts in the Bankruptcy Proceedings to monetize the Portfolio Companies. *See, e.g.*, Notice of Removal at 4-6, 10. Not only does this argument prove too much – as it could justify a bankruptcy court exercising jurisdiction over any substantial claim against a debtor's subsidiary, contrary to the cases cited in the preceding paragraphs – but the Bankruptcy Court rejected this argument, finding that the Settlement Agreement expressly anticipates such claims against the Portfolio Companies and provides a mechanism for resolving them that does not hinder the sale of the Portfolio Companies "free and clear" of such claims. *See* Aug. 4 Hearing Tr. at 90:19-91:11. Finally, regardless of the existence or venue of this action, Defendants have liabilities on their books for the sums owed to Plaintiffs – whatever effect (if any) these debts have on Debtors' monetization efforts would not change if this action disappeared.

## II. EVEN IF THERE WERE SUBJECT MATTER JURISDICTION, THIS CASE SHOULD BE REMANDED ON PERMISSIVE ABSTENTION OR EQUITABLE REMAND GROUNDS.

Even if there were subject matter jurisdiction over these claims (and there is not), the claims should still be remanded to the State Court because doing so would further the interests of justice. Under the statutorily-recognized doctrine of permissive abstention, a court may abstain from hearing claims over which it has jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for state law." 28 U.S.C. § 1334(c)(1). Similarly,

under the doctrine of equitable remand, also recognized by statute, a court may equitably remand claims "on any equitable ground." 28 U.S.C. § 1452. These "two inquiries are essentially the same and often analyzed together." *Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 60 (S.D.N.Y. 2011).

In considering equitable remand, the following factors may be relevant: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants. *Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991). All of these factors are "illustrative, and the Court may remand on any equitable ground." *In re NTL, Inc.*, 295 B.R. 706, 719 (S.D.N.Y. 2003).

Courts examine similar factors when considering permissive abstention: (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) the existence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of the asserted "core" proceeding; (8) the feasibility of severing state law claims or bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy judge's docket; (10) the likelihood that the commencement of the proceeding in the bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceedings of nondebtor parties. *In re Olympia & York Maiden Lane Co. LLC*, No. 98 B 46167 JLG, 1999 WL

58581, at *1 (Bankr. S.D.N.Y. Jan. 25, 1999).

These equitable remand and permissive abstention factors heavily favor remand here, as Judge Pauley recently determined in *Tilton v. MBIA*. *See id.* (remanding state law claims which did not "arise under" Title 11, notwithstanding certain apparent similarities in the complaints, reasoning that (a) because the claims do not "arise under" the Zohar Funds' bankruptcy, transfer is not available under 28 U.S.C. § 1412; and (b) if transfer cannot be granted, then no efficiency will be achieved through federal adjudication).[2] First, remand would have no negative effect on the efficient administration of the bankruptcy estate. As the Bankruptcy Court concluded, Plaintiffs' claims do not implicate the Settlement Agreement. Indeed, if anything, remand would improve the administration of the Bankruptcy Proceedings because it would avoid the Bankruptcy Court having to litigate state law contract claims between non-debtors. *See Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 408 (S.D.N.Y. 1991) ("retention of federal jurisdiction could detract from the efficient administration of the estate and impose an unnecessary burden on the bankruptcy court by requiring the bankruptcy court to expend time and resources on the state law action that could otherwise be spent administering to the estate").

Further, removing and transferring these claims to Bankruptcy Court would be particularly inefficient. As an initial matter, as set forth in Point I.A, above, forcing Plaintiffs to litigate these straightforward contractual claims in the context of a thirty-three count adversary proceeding involving different parties and predominated by unrelated claims is the exact

---

[2] In *Zohar I v. Patriarch Partners*, Judge Pauley also observed, in denying transfer under 28 U.S.C. § 1404, that plaintiff's "choice of forum is presumptively entitled to substantial deference" and that the most relevant witnesses appeared to be located in New York rather than Delaware. *See id.* at *7-8. The same factors militate all the more strongly against transfer here, where the Defendants are neither debtors nor creditors in the bankruptcy, where there are no witnesses in Delaware, and where the parties specifically identified New York as their choice of forum and New York law applies to the claims under the MSA and Credit Agreement.

16

opposite of efficiency. It is not even clear how Defendants would do so procedurally – if that is indeed their intention – given that they are not parties to the adversary proceeding, nor have Plaintiffs' claims been asserted therein. To make matters worse, these are non-core claims upon which the Bankruptcy Court cannot render a final decision. *See Stern v. Marshall*, 564 U.S. 462, 475 (2011) (a bankruptcy court may only provide recommendations on non-core claims and the district court must enter final judgment). Thus, any adjudication in the Bankruptcy Proceedings would be limited to proposed findings of fact and conclusions of law, which would then be subject to *de novo* review by the Delaware District Court before entry of any final judgment – meaning that Plaintiffs would be forced to endure two complicated and time-consuming proceedings simply to establish that they are entitled to payment of unpaid contractual fees and expenses. The inefficiencies of this process counsel strongly in favor of remand. *See, e.g., N.Y. Commercial Bank v. Pullo*, No. 12-02052, 2013 WL 494050, at *6 (Bankr. S.D.N.Y. Feb. 7, 2013) (remanding action to state court in part because state court could directly render judgment on non-core claim and bankruptcy court could not).

        Second, state law completely predominates these claims. No federal law or bankruptcy issues are presented in this straightforward contractual action. *See McMillan v. Barclays Bank PLC*, No. 1:13-CV-01095 ALC DF, 2014 WL 4364053, at *5 (S.D.N.Y. Sept. 3, 2014) (state law claims predominate where there are "no federal or bankruptcy claims asserted in the complaint, and bankruptcy issues are only implicated, if at all, tangentially"). While the contractual claims here are not complex or unsettled, federal courts are reluctant to wade into even common state law claims without adequate reason. *See Drexel Burnham Lambert Grp.*, 130 B.R. at 409 ("Congress has made it plain that, in respect to … cases which assert purely state law causes of action, the federal courts should not rush to usurp the traditional precincts of the

state court.").  Simply put, this "is a state law action and a state court is 'better able to respond'
to a suit involving state law."  *In re Comtek Elec*., Inc., 23 B.R. 449, 451 (Bankr. S.D.N.Y.
1982).

      <u>Third</u>, comity counsels leaving matters of state law to state courts.  Adjudication
of this action requires no application of bankruptcy or other federal law, and "it is well settled
that comity considerations dictate that federal courts should be hesitant to exercise jurisdiction
when state issues substantially predominate."  *Sealink Funding Ltd. v. Bear Stearns & Co. Inc*.,
No. 12 CIV. 1397 LTS HBP, 2012 WL 4794450, at *4 (S.D.N.Y. Oct. 9, 2012); *see also*
*Buechner v. Avery*, No. 05 CIV. 2074 (PKC), 2005 WL 3789110, at *6 (S.D.N.Y. July 8, 2005)
("The interests of comity are promoted by allowing the claims to remain where the plaintiffs
elected to bring them, *i.e*. state court.").

      <u>Fourth</u>, the relationship between this action and the main bankruptcy case is
remote and highly attenuated. The parties are all non-debtors and the Defendants are not
creditors of the estate.  *See Drexel*, 130 B.R. 405 at 407 (exercising equitable remand in part
because "defendants are not creditors of [debtor's] estate or parties otherwise involved in the
bankruptcy proceeding").  The Bankruptcy Court has rejected the argument that these claims fall
within an adjudication protocol governed by the Settlement Agreement.  *See* Aug. 4, 2020
Hearing Tr. at 85:20-88:14.  Therefore, the only apparent connection between this action and the
Bankruptcy Proceedings is the mere fact that the Zohar Funds hold certain direct and/or indirect
ownership interests in certain Defendants, which as a matter of law does not warrant removal.
*See Drexel*, 130 B.R. 405 at 407 (S.D.N.Y. 1991) (mere fact that action could affect assets of
estate was insufficient connection to warrant bankruptcy jurisdiction over state law claims);
*Schumacher v. White*, 429 B.R. 400, 406 (E.D.N.Y. 2010) ("Even if resolution of the controversy

18

. . . might reduce claims against the debtor's estate, a bankruptcy court's exercise of jurisdiction over a collateral controversy is improper where it is possible to administer the estate without resolving the controversy.")

Fifth, the absence of any jurisdictional basis other than 28 U.S.C. § 1334 militates in favor of abstention. *See McMillan*, 2014 WL 4364053, at *5 (S.D.N.Y. Sept. 3, 2014) ("Plaintiff's only asserted basis for jurisdiction is 28 U.S.C. § 1334. This factor weighs in favor of abstention."); *In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 152 (Bankr. S.D.N.Y. 2010) (absence of federal question or diversity jurisdiction weighs in favor of remand).

Sixth, Defendants' obvious forum shopping in seeking to remove these cases and transfer them to the Delaware Bankruptcy Court weighs in favor of remand. Plaintiffs filed this action in New York state court, the forum that was expressly agreed upon by the parties in the MSA and Credit Agreement. Defendants' removal appears to have been motivated by their desire to escape from a timely judgment in state court on claims to which they have no apparent defense. *See, e.g., Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 60 (S.D.N.Y. 2011) (finding an impression of forum shopping favoring permissive abstention where removal was apparently filed to evade adverse ruling in state court); *McMillan*, 2014 WL 4364053, at *5 (S.D.N.Y. Sept. 3, 2014) (forum-shopping considerations weighed in favor of permissive abstention where party filed suit in forum it deemed "more convenient" than forum selected in loan agreement); *see also Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 288 (S.D.N.Y. 2018) (Carter, J.), *aff'd*, 785 F. App'x 18 (2d Cir. 2019) ("The Supreme Court has made clear that 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'"), quoting *Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Tex.*, 571 U.S. 49, 62 (2013).

Seventh, the presence in the proceeding of non-debtor parties weighs in favor of remand because *all* parties are non-debtors. *See In re New York City Off-Track Betting*, 434 B.R. at 154 (this factor "weighs heavily in favor of abstention" where all parties are non-debtors); *see also In re Masterwear Corp.*, 241 B.R. 511, 521 (Bankr. S.D.N.Y. 1999) (exercising permissive abstention in part because "action involves nondebtors").

Accordingly, the relevant factors militate strongly in favor of remanding this case under both the equitable remand and permissive abstention doctrines.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court remand this action to New York state court and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      September 25, 2020

          ALLEGAERT BERGER & VOGEL LLP

          By:   /s/ David A. Berger
              David A. Berger
              John S. Craig
              Lauren J. Pincus
              Bianca Lin

          111 Broadway, 20th Floor
          New York, New York 10006
          (212) 571-0550

          *Attorneys for Plaintiffs*
          *Patriarch Partners Management Group, LLC and*
          *Patriarch Partners Agency Services, LLC*